ROELL *v.* BROOKS, et al.

In Banc.   Feb. 14, 1949.

(38 So. (2d) 716)

Harmon **W. Broom**, for appellant.

258

Crawley & Ford, for appellees.

Alexander, J.

Roell was a tenant of appellees, occupying under lease a store building in the Town of Kosciusko. The lease contract provided: "The said Second Party (Lessee) agrees and binds himself to keep the interior of the premises in as good repair as the same are at the commencement of this lease, ordinary wear and tear excepted, except that the said Second Party is not to do or perform any major repairs or replacements to the interior or exterior of said premises. It is further understood and agreed between the Parties that a major repair or replacement shall be any repair or replacement costing Fifty Dollars or more provided that the damage to be repaired was not caused by a negligent or willful act of the Second Party, his agents, employees, or by his customers or patrons."

The business was in charge of one Jennings who was employed by Roell. In the evening of December 31, 1946, the building was damaged by fire. Jennings had closed the store about six P. M. and gone home for supper. The

weather was cold, and he intended to return to do some work after supper. He left the gas heater burning as had been his custom when going out for meals. He was notified that the building was afire and returned immediately. Witnesses described the extent and location of the fire. The lessors brought suit, after demand, for damages thereby caused and thereafter repaired, and procured judgment for $1,000, from which judgment the lessee appeals.

The controlling issue, therefore, involved a determination of the cause of the fire, and the suit was based upon the alleged negligence of the manager, Jennings, in leaving the gas heater burning, which was asserted to have been the proximate cause of the damage. Joined with Roell as defendants were Jennings and Ozburn-Abston & Company. The two last named were dismissed from liability by the court, upon their motion.

Code 1942, Section 898, is sought to be invoked as a basis of liability on the part of the lessee. This section is as follows: "A tenant shall not be bound to pay rent for buildings after their destruction by fire or otherwise, nor shall a covenant or promise by a lessee to leave or restore the premises in good repair have the effect to bind him to erect or pay for such buildings as may be so destroyed, unless in respect to the matters aforesaid there was negligence or fault on his part, or unless he has expressly stipulated to be so bound."

It was upon the theory that the suit was upon the contract that the trial court sustained the motion to exonerate Jennings. ██ █ The quoted section does, of course, affect the contract rights of the parties to a lease, but the concluding clause is merely declaratory of a common law right to sue the tenant for a negligent act, resulting in damage. In view of our conclusions, we do not discuss the effect of a discharge of Jennings as a release of Roell, whose liability, if any, was under the doctrine of respondeat superior.

Even if it be assumed for our discussion that it was negligence per se to leave a gas heater burning, under the circumstances,—an assumption which we indulge with reluctance—it was part of the plaintiffs' burden to relate such act causally to a resultant damage. This, they undertook to do by showing that the heater was placed about two feet from the wall, that there were stacked upon a shelf in the rear of the heater about twenty invoices. Estimate of the distance from the heater to this shelf varied from three inches to two feet. After the fire, these invoices which had been so exposed for several months, were found not to have been burned, but only "charred," or scorched. The heater was connected to the outlet provided by the lessors, and after the fire was put into satisfactory operation without further repairs. It had a firebrick or clay back, and had been in operation for about three months under the same conditions without injury. A duplicate was exhibited to the jury and placed in operation without causing exposed inflammatory materials to become overheated. Some witnesses placed the body of the fire as within the area of the heater; others in the ceiling. A ceiling joist was shown by testimony and photographs to be deeply burned at the point where the wires to a ceiling electric fixture emerged. Electrical experts gave contradictory testimony regarding the hazards attendant upon the wiring. Some witnesses were allowed to give expert testimony that the electrical system was defective, and that the fire was caused by a short circuit.

We do not detail all the testimony. Some tended to support plaintiffs' theory, some that of the defendant. We must keep before us, however, that the plaintiff's burden of proof was to show by a preponderance of evidence that the defendant did not use reasonable care in the maintenance of a reasonably safe gas heater and that such failure was the proximate cause of the fire and

resulting damage. After careful examination of the entire record, we are unable to find substantial support for the burden cast upon the plaintiffs. The peremptory instruction for the defendant ought to have been given.

Reversed and judgment here for appellant.